IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| RICE ENTERPRISES, LLC, | )<br>)<br>) 2:23-CV-00846-MJH<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiff, | |
| vs. | |
| RSUI INDEMNITY COMPANY, ZENITH INSURANCE COMPANY, | |
| Defendants, | |

OPINION

Plaintiff, Rice Enterprises, LLC, brings the within action against Defendants, RSUI Indemnity Company and Zenith Insurance Company, concerning insurance coverage for defense and indemnification based upon a pending Allegheny County Court of Common Pleas lawsuit (L.H. lawsuit). (ECF No. 20).

Specifically, Rice's Amended Complaint avers claims for Declaratory Judgment (Counts I and II), Breach of Contract (Counts III, IV, and V), and Statutory Bad Faith under 42 Pa.C.S. § 8371 (Counts VI and VII) due to 1) RSUI's denial of indemnification under Rice's Directors and Officers Liability policy (D&O policy); 2) RSUI's denial of defense and indemnification under Rice's Commercial Umbrella Liability policy (Umbrella policy); and 3) Zenith's denial of defense and indemnification under Rice's Employers' Liability policy (Zenith policy). *Id*.

Pursuant to Fed. R. Civ. P. 12(b)(6), Zenith moves for dismissal, contending that it owes no duty to defend and/or indemnify under the Zenith policy because of the policy's exclusion language, and that Rice's claim for statutory bad faith fails as a result. (ECF No. 23). RSUI moves for partial dismissal, contending that it owes no duty to defend and/or indemnify under the Umbrella policy, and that Rice's claim for statutory bad faith fails. (ECF No. 21).

Upon consideration of Defendants' Motions (ECF Nos. 21 and 23), the respective briefs (ECF Nos. 22, 24, 27, 30, and 31), and for the following reasons, Zenith's Motion to Dismiss will be granted, and RSUI's Partial Motion to Dismiss will be granted.

I. Background

**A. L.H. Lawsuit**

On or around September 21, 2021, L.H., a minor, by and through her parents and natural guardians T.H. and B.H. (collectively, "L.H."), filed a civil action in the Court of Common Pleas of Allegheny County, Pennsylvania, against Rice Enterprises, McDonald's USA, LLC, and McDonald's Corporation (collectively Rice and McDonald's). (ECF No. 20 at ¶ 6 and ECF No. 20-1). The plaintiffs allege that on October 25, 2020, L.H., then 14 years old, applied for a job with McDonald's via the McDonald's Careers website. *Id*. at ¶ 27. L.H. was hired to work as a "Crew Member" at a McDonald's restaurant operated by Rice Enterprises. *Id*. at ¶ 36. L.H. allegedly did not receive the full three-day orientation training that she was promised, nor did she receive any training concerning sexual harassment and reporting of the same. *Id*. at ¶¶ 37-44.

In January 2021, a new manager, Walter A. Garner, was hired, and he thereafter supervised L.H.'s shift. *Id*. at ¶ 46. "Unbeknownst to [L.H.]," Garner was hired, even though he was (and remains) publicly registered as a "Lifetime Offender" on Megan's Law Public Report following his 2003 guilty plea, conviction, and incarceration for sexual assault of a 10- year-old girl. *Id*. at ¶ 47. L.H. alleges that "Garner began sexually harassing [her] almost immediately after they began working together on the same shift." *Id*. at ¶ 48. Other McDonald's employees and managers allegedly overheard Garner's verbal harassment. *Id*. at ¶¶ 49-50. L.H. alleges that Garner's comments soon "became both more overt and more frequent," and then "Garner began touching [L.H.] inappropriately, including brushing up against her while walking by, touching

her hair, and touching other parts of her body." *Id*. at ¶ 55.  L.H. avers that "Garner was also abusing and harassing other minor McDonald's employees" at the same that he was harassing L.H.  *Id*. at ¶ 58.  L.H. and two other employees allegedly informed McDonald's "about the harassment they were experiencing and the identity of the manager," but it is alleged that "McDonald's did not take any steps to stop the harassment."  *Id*. at ¶¶ 65, 67.  In mid-February 2021, during a work shift , Garner followed L.H. into the bathroom at the McDonald's restaurant and raped her.  *Id*. at ¶ 71.

Rice allegedly learned about Garner's harassment only after an unrelated theft on the premises prompted Rice to review surveillance footage, which coincidentally showed Garner groping L.H.  *Id*. at ¶¶ 77-78. Although "McDonald's management spoke to Garner about the conduct viewed on video," Garner was neither disciplined nor fired.  *Id*.  at ¶ 79.  This harassment allegedly continued until Garner was arrested in mid-April 2021.  *Id*. ¶¶ 80-86.

L.H. has alleged a single claim for negligence against Rice and McDonald's.  *Id*. ¶¶ 116-119.  It is alleged that Rice and McDonald's were negligent in failing adequately train L.H. "on how to identify, address, and report incidents of sexual harassment, sexual assault and/or battery, and sexually hostile work environment";  and in "[f]ailing to adequately perform screening and/or background checks on Garner prior to hiring" him; and in "[f]ailing to adequately supervise Garner"; and in "failing to properly address" employee "complaints of harassment and abuse"; and in"[f]ailing to publish and distribute policies and procedures on sexual harassment and reporting." *Id*. at ¶ 117.

      B.  **Present Lawsuit**

           1.  Allegations against Zenith

Rice alleges it was the named insured on a Zenith Employers' Liability policy. *Id*. at ¶ 40. On August 15, 2022, Rice provided Zenith with notice of L.H.'s Allegheny County Complaint, and requested Zenith's defense and indemnification for that lawsuit. *Id*. at ¶ 41. On September 19, 2022, Zenith sent Rice a coverage denial letter. *Id*. at ¶ 43. Zenith relies upon two exclusions for denying coverage. *Id*. at ¶ 44. Rice argues that Zenith's coverage denial under said exclusions is nonsensical and meritless. *Id*. at ¶ 50. Rice avers claims against Zenith for Declaratory Judgment (Count I), Breach of Contract (Count III), and Bad Faith Pursuant to 42 Pa.C.S. § 8371 (Count VI).

    2. Rice's allegations against RSUI

Rice avers that it is the named insured on an RSUI Directors and Officers Liability policy. (ECF No. 20 at ¶ 25). In or around September 22, 2021, Rice submitted the L.H. lawsuit to RSUI, requesting defense and indemnification under the D&O policy. *Id*. at ¶ 26. On September 29, 2021 and December 2, 2021, RSUI acknowledged that it owed a duty to defend Rice for the L.H. Lawsuit under the D&O policy. *Id*. at ¶ 27. However, on March 3, 2023, RSUI, denied indemnity coverage for the L.H. Lawsuit under the D&O policy. *Id*. at ¶ 36. Rice avers claims against RSUI for Declaratory Judgment (Count II), Breach of Contract (Count IV), and Bad Faith Pursuant to 42 Pa.C.S. § 8371 (Count VII) concerning the D&O policy.

Rice also avers that it is the named insured on an RSUI Commercial Umbrella policy. *Id*. at ¶ 51. The Umbrella policy affords coverage to Rice above and beyond the Zenith policy and the RSUI D&O policy. *Id*. at ¶ 52 (ECF No. 20-8). In or around September 22, 2021, Rice submitted the L.H. lawsuit to RSUI, requesting defense and indemnification pursuant to the Umbrella policy in relation to the L.H. Lawsuit. *Id*. at ¶ 53. Rice alleges that RSUI knew of the existence of the Umbrella policy, but it failed to acknowledge Rice's tender of coverage under

the Umbrella policy in either of its September 29th or December 2nd letters. *Id*. at ¶ 55. While acknowledging its duty to defend Rice under the D&O policy, RSUI denies any defense or indemnity coverage under the Umbrella policy. *Id*. at ¶ 56. Rice avers claims against RSUI for Declaratory Judgment (Count II), Breach of Contract (Count V), and Bad Faith Pursuant to 42 Pa.C.S. § 8371 (Count VII) concerning the Umbrella policy.

II.     Relevant Standards

**A. Motion to Dismiss**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal

evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

### B. Insurance Policy Interpretation

Pennsylvania courts apply traditional rules of contract interpretation to insurance policies. The goal is to ascertain the parties' intent, as manifested by the policy language. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). Pennsylvania courts give words of common usage their "natural, plain, and ordinary sense." *Kvaerner Metals Div. of Kvaerner v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). Clear and unambiguous terms must be given their effect. *Nationwide Mut. Ins. Co. v. CPB Int'l*, 562 F.3d 591, 595 (3d Cir. 2009); *Kvaerner*, 908 A.2d at 897. "[A] provision is ambiguous only if reasonable people

could, in the context of the entire policy, fairly ascribe different meanings to it." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

### C. Duties to Defend and Indemnify

In determining whether an insurer has a duty to defend, Pennsylvania courts follow the "four corners" rule, which requires comparison of "the four corners of the insurance contract to the four corners of the complaint." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010). "[O]nly allegations contained within the underlying complaint pertaining to injuries which are either actually or potentially within the scope of the insurance policy obligate the insurer to defend the insured." *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 355-56 (Pa. Super. Ct. 1996). "[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999); see also *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct. 1997) ("[I]n focusing attention upon the cause of action pled, [claimants] run afoul of our caselaw, which dictates that the factual averments contained in a complaint determine whether an insurer must defend."). This prevents "the use of artful pleadings designed to avoid exclusions in liability insurance policies." *Haver*, 725 A.2d at 745.

III. Discussion

### A. Zenith's Motion to Dismiss

Zenith moves to dismiss Rice's claims for defense and indemnification under its Employer's Liability policy in Count I (Declaratory Judgment), Count III (Breach of Contract), and Count VI (Statutory Bad Faith).

1. <u>Zenith Policy</u>

Zenith's policy provides that it "will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers' Liability Insurance." (ECF No. 20-6 Part Two, § B). Zenith argues that exclusions within said policy precludes coverage of the claims and damages at issue in the L.H. lawsuit. Part Two of the Zenith policy contains a number of exclusions, including the following:

> This insurance does not cover:
>
> . . .
>
> 4. Any obligation imposed by a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;
>
> …
>
> 7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

*Id*. at p. 8 ("Exclusions C.4 and C.7").

2. Analysis

   a. Exclusion C.4

Zenith argues that coverage is barred under Exclusion C.4, because the L.H. lawsuit arises out of an obligation imposed by a worker's compensation law. Specifically, Zenith contends that, as alleged in her complaint, L.H. was subjected to harassment, inappropriate touching, abuse, sexual harassment, coercion, and sexual assault by her supervisor on Rice's premises and during her work shifts. (ECF No. 20-1 at ¶¶ 5-6, 43-95). The L.H. lawsuit also claims her harm was the result of Rice's negligent decision to hire and failure to supervise Garner. *Id*. Zenith maintains that any recovery by L.H. from Rice would be an "obligation

imposed by a workers' compensation," such that coverage under the Employer Liability policy is excluded by policy Exclusion C.4.

Rice maintains that none of the claims or damages asserted in the L.H. lawsuit involve or implicate any obligation imposed by any "occupational disease, unemployment compensation, or disability benefits law, or any similar law." Rice argues that Zenith's own denial of coverage letter concedes that L.H. does not seek to recover benefits under the Pennsylvania Workers' Compensation Act ("PWCA"). Rice contends that, since no worker's compensation claim has been filed by L.H., coverage under the Zenith Employers' Liability policy is not excluded. In addition, Rice argues that an employers' liability policy covers injuries to employees.

As regards Rice's argument against Exclusion C.4, based upon no worker compensation claim having been filed, in cases interpreting the same policy language, courts have held that said exclusion bars coverage for claims that are subject to workers compensation exclusivity, regardless of whether the employee actually sought such benefits. "It is the fact that the employee's claim comes within the scope of the workers' compensation statute rather than the actual fact that he or she has recovered or is receiving workers' compensation for his or her harm, which is the basis for [the workers' compensation exclusion]." *Morales v. Zenith Ins. Co.*, 152 So. 3d 557, 563 (Fla. 2014) (quoting 8 Couch on Ins. § 115:89 (3d ed. 2013)) (holding identical Exclusion C.4 language barred coverage for default judgment of personal injury claim). "The 'obligation imposed' by the workers' compensation law is readily understood to mean the obligation as an employer, under workers' compensation, to provide benefits. That inchoate obligation exists whether or not an employee actually chooses to seek benefits." *Culligan v. State Comp. Ins. Fund*, 96 Cal. Rptr. 2d 656, 664 (Cal. App. 2000) (emphasis added) (holding that identical Exclusion C.4 language barred coverage for tort lawsuit where injuries were covered by

9

workers compensation exclusivity, regardless of whether the employee actually seeks workers compensation benefits). The Court is persuaded, that consistent with *Morales* and *Culligan*, application of Exclusion C.4 to deny coverage does not require that L.H. seek or claim workers compensation benefits. As such, Exclusion C.4 applies and precludes coverage for the L.H. lawsuit, notwithstanding L.H. has not claim worker compensation benefits.

As regards Rice's argument that the Zenith Employer's Liability provides a path for coverage for an injury to employees, such as those alleged by L.H., said argument lacks merit. The PWCA also "provides that worker's compensation is the exclusive remedy for injuries arising in the course of a worker's employment." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 160 (3d Cir. 1999); see 77 P.S. § 481(a). "There is a rebuttable presumption that the injury is work related where it occurs on the premises of the employer." *Albright v. Concurrent Techs. Corp.*, No. 3:21-CV-112, 2022 WL 4640115, at *7 (W.D. Pa. Sept. 30, 2022). Given the broad sweep of the PWCA's exclusivity rule, "the Pennsylvania Supreme Court has held that even intentional torts committed by the employer fall within the coverage of the Act" and are subject to the exclusivity rule. *Danese*, 784 F. Supp. at 229 (citing *Poyser v. Newman & Co.*, 522 A.2d 548, 551 (Pa. 1987)). Courts have broadly applied the PWCA's exclusivity rule to preempt civil claims for workplace torts including assault, shootings, and fraud, among others. See, e.g., *Albright v. Concurrent Techs. Corp.*, No. 3:21-CV-112, 2022 WL 4640115, at *8 (W.D. Pa. Sept. 30, 2022) (applying PWCA's exclusivity rule to allegations of workplace "harassment and hostility"); *Abbott v. Anchor Glass Container Corp.*, 758 A.2d 1219, 1225 (Pa. Super. 2000) (holding PWCA's exclusivity rule applied to the intentional shooting by a co-employee, resulting in death).

As particularly relevant here, courts have applied the PWCA's exclusivity rule to preempt claims of workplace sexual harassment and attempted rape. *See Blazevich v. Star Hotels, Inc.*, Civ. A. No. 3:19-198, 2021 WL 1214688, at *8 (W.D. Pa. Mar. 31, 2021) (holding PWCA exclusivity applied to negligent supervision claims related to sexual harassment by co-worker); *Holland v. NTP Marble, Inc.*, No. 17-CV-2909, 2019 WL 2059966, at *11 (E.D. Pa. May 8, 2019); *Hershey v. Ninety-Five Assocs.*, 604 A.2d 1068, 1070 (Pa. Super 1992) (holding PWCA's exclusivity rule applied to physical attack and attempted rape). Here, the injuries and damages alleged by L.H. occurred during the course of and at L.H.'s Rice employment worksite. As such, in the facts and circumstances presented, employer liability to L.H. would be an obligation imposed by PWCA, and coverage therefore is excluded by Exclusion C.4 of the Zenith policy. Rice's arguments to the contrary fail. Exclusion C.4 applies to exclude coverage under the Zenith policy.

      b. Exclusion C.7

Zenith argues that Exclusion C.7 bars coverage, because the L.H. lawsuit arises out of "harassment, humiliation, discrimination, or personnel practices, policies, acts or omissions." In the L.H. lawsuit, L.H. contends she was harmed as an employee due to her supervisor Garner's misconduct, including sexual harassment. L.H. also alleges that Rice's negligence in its personnel practices, policies, acts and omissions caused her harm. Zenith denied coverage based upon allegations within the L.H. lawsuit and the application of Exclusion C.7.

Rice asserts that Exclusion C.7 does not apply to the allegations in the L.H. lawsuit, because the damages sought by L.H. arise out of "coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation…" from Garner and not by employer Rice. Rice further contends that the term "sexual misconduct" is not specified as an

11

exclusion under Exclusion C. 7. Further, as regards Exclusion C.7's terms "personnel practices, policies, acts or omissions," Rice argues that said language is ambiguous and undefined in the policy; and, where Zenith now seeks to exclude coverage, based upon such policy language, Zenith's failure to define such terms prevents enforcement of Exclusion C.7 in this case.

Presently, where coverage is denied based on an exclusion, the burden is on the insurer to prove the applicability of the claimed exclusion. *Nationwide Mutual Insurance Co. v. Arnold*, 214 A.3d 688, 695, 701-02 (Pa. Super. 2019). Exclusion C.7 precludes damages that arise out of enumerated circumstances or events. Pennsylvania courts interpret the phrase "arising out of" in policy exclusions in a very broad manner to mean a causal, "but for" relationship. *Madison Contr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 110 (Pa. 1999); *McCabe v. Old Republic Ins Co.*, 228 A.2d 901, 903 (Pa. 1967) (stating that "arising out of" unambiguously means "causally connected with, not proximately caused by"). If the alleged injuries would not have happened but for the excluded conduct, the injuries "arise out of" the conduct. *First Liberty Ins. Corp. v. Coll*, 2015 Phila. Ct. Com. Pl. LEXIS 14, at *14 (Pa. Ct. Comm. Pl. Jan. 6, 2015), *aff'd*, 131 A.3d 85 (Pa. Super. Ct. 2015).

Rice's argument, that coverage under the Zenith Policy cannot be excluded because of the conduct of Garner, lacks merit. Other courts have addressed identical language contained in Exclusion C.7 and ultimately concluded that allegations of conduct similar to Garner's, as alleged in the L.H. lawsuit, satisfies the "arise out of" causal link to exclude coverage. *See, e.g. Gen. Star Indem. Co. v. Sch. Excess Liab. Fund*, 888 F.Supp. 1022, 1028 (N.D. Cal. 1995) (finding exclusion based upon allegations of coercive conduct by supervisor and employee humiliation); *Fisher v. St. Paul Ins. Co. of Illinois*, 02 C 9488, 2003 WL 1903983, at *9 (N.D. Ill. Apr. 17, 2003) (upholding exclusion based upon allegations of sexual discrimination,

harassment, and assault); *TIG Ins. Co. v. Sweet Factory, Inc.*, 748 So.2d 337, 339 (Fla. Dist. Ct. App. 1999) (upholding exclusion based upon clear and unambiguous language wherein, like the L.H. complaint, alleged sexual harassment of minor employee by supervisor). Here, the L.H. lawsuit unequivocally sets forth allegations of "damages arising out of" harassment, humiliation, and coercion." (ECF No. 20-1 at ¶¶ 48, 56, 61-62, and 82(a)). Thus, as to the conduct of Garner, vis-à-vis coverage for Rice, Exclusion C.7 applies to preclude coverage.

Further, the L.H. lawsuit alleges her damages "arise out of" Rice's personnel practices, policies, acts or omissions, namely, in hiring Garner despite his sexual misconduct history, and his status as a registered sex offender, and Rice's failure to adequately train L.H. and take action following the observation and/or reports of Garner's misconduct.   Each of these allegations support the applicability of Exclusion C.7 to preclude coverage to Rice.  The Court finds no ambiguity in the policy language, and L.H.'s complaint allegations fall squarely within the plain meaning of the terms "personnel practices, policies, acts or omissions."  Thus, Exclusion C.7 applies to preclude Zenith's coverage for Rice.

  c. Bad Faith

Finally, as regards Rice's claim for Bad Faith against Zenith, Zenith argues that Rice's statutory bad faith claim fails because, where the policy provides for a reasonable basis for exclusion, there can be no bad faith as a matter of law.  Rice contends that it has sufficiently pleaded a bad faith claim against Zenith.

"Resolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim premised on the denial of coverage, because under the circumstances the insurer necessarily has a reasonable basis for denying benefits." *Gold v. State Farm Fire and*

13

*Cas. Co.*, 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012) (citing *Frog, Switch, & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999)).

Here, given that Exclusions C.4 and C.7 of the Zenith policy apply to exclude coverage to Rice, Zenith's denial of a defense and indemnification under its policy was reasonable. As such, Rice cannot maintain a statutory bad faith claim against Zenith for its refusal to defend and indemnify.

Accordingly, based upon the foregoing, Zenith's Motion to Dismiss will be granted. Rice's claims against Zenith, Counts I, III, and VI will be dismissed. Because the Court's analysis is based upon the policy language and allegations within the L.H. lawsuit, any amendment to Rice's claims against Zenith would be futile. Therefore, there will be no leave to amend. All claims against Zenith will be dismissed, with prejudice.

### B. RSUI's Partial Motion to Dismiss

RSUI moves to dismiss Rice's claims for Declaratory Judgment (Count II), Breach of Contract (Count V), and Statutory Bad Faith (Count VII), concerning Rice's tender for defense and indemnification under the RSUI Umbrella policy.

#### 1. The RSUI Commercial Umbrella Liability Policy

The RSUI Umbrella policy provides in relevant part as follows:

**I. INSURING AGREEMENT**

1. We will pay on behalf of the insured those sums in excess of the "retained limit" which the insured becomes legally obligated to pay as damages to which this insurance applied because of "bodily injury", "property damage" or "personal and advertising injury".

\*\*\*

2. We will have the right and duty to defend any "suit" seeking those damages when:

> a. The applicable limits of insurance of the "underlying insurance" and other insurance have been used up in the payment of judgments or settlements; or
>
> b. No other valid and collectible insurance is available to the insured for damages covered by this policy.
>
> ***
>
> **9. Loss Payments**
>
> a. We will have liability for any one "occurrence" or offense only when the amount of the "retained limit" with respect to such "occurrence" of offense has been paid by:
>
>> (1) The insured;
>>
>> (2) Us on behalf of the insured (other than this policy; or
>>
>> (3) The insured's underlying insurer.
>
> b. If we are obliged to indemnify the insured for any payment or judgments or settlements, the insured must make a written claim within 12 months of:
>
>> (1) Actually paying any amount in excess of the "retained limit"; or
>>
>> (2) The insured's liability being made certain by:
>>
>>> (a) The final judgment of a trial; or
>>>
>>> (b) The written agreement of the insured, the claimant or the claimant's legal representative and us.

(ECF No. 20-8 at pp. 31, 14-16).

## 2. <u>Analysis</u>

### a. Duty to Defend

RSUI argues that any duty to defend Rice under its Umbrella policy has not been triggered. Specifically, RSUI maintains that Rice's underlying insurance, which includes the

RSUI D&O policy and the Zenith policy, has not been "used up in the payment of judgments or settlements," and Rice does not aver that "no other valid or collectible insurance is available to the insured for damages covered by [the RSUI Commercial Umbrella Liability policy]."  Given this Court's above ruling, that there is no coverage under the Zenith Policy, no further discussion concerning Zenith is necessary.   The only remaining issue as regards the Umbrella policy is the status of coverage under the RSUI D&O policy.  In regards to the RSUI D&O policy, RSUI contends that, if the D&O policy partially applies to the claims in the L.H. lawsuit, as Rice contends, then the L.H. lawsuit is not an uncovered occurrence for purposes of the RSUI Umbrella policy.   Rice maintains that, because of the Zenith coverage denial, it has an "uncovered occurrence" that would trigger RSUI's Umbrella policy.

"When an insured is covered by both a primary policy and an excess policy, the general rule is that the excess liability carrier is not obligated to participate in the defense until the primary policy limits are exhausted." Steven Plitt et al., *Couch on Insurance* § 200:42 (3d. ed. 2020). The Third Circuit has explained that "a true excess or secondary policy is not 'triggered' or required to pay until the underlying primary coverage has been exhausted." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996).

Here, Rice's Amended Complaint does not support the triggering of RSUI's Umbrella policy, because RSUI has accepted Rice's defense tender under its D&O policy. (ECF No. 20 at ¶ 27).  Therefore, under the Umbrella policy language, there has yet to be an uncovered "occurrence," notwithstanding the lack of any coverage under the Zenith policy.  In addition, Rice's claim for excess coverage under RSUI Umbrella policy is premature because Rice does not allege the limits of liability and defense under the D&O policy have been exhausted.  Thus, Rice cannot claim any present duty to defend under RSUI's Umbrella policy. Accordingly,

RSUI's Partial Motion to Dismiss, as regards defense in the L.H. lawsuit under the Umbrella policy, will be granted.

b. Duty to Indemnify

RSUI also argues that Rice's request for indemnification under the Umbrella policy is premature. It maintains that coverage for loss payments is only triggered when the retained limit has been paid by the insured, or paid by RSUI on behalf of the insured under policies other than the Commercial Umbrella Liability policy, or paid by Rice's other underlying insurer(s). RSUI contends that none of these conditions have been met; therefore, no duty has yet arisen under the RSUI Umbrella policy. Rice argues that its demand for indemnification is timely and judicially economical. Specifically, it maintains that dismissal of the claims against RSUI's Umbrella policy should not occur, given that the L.H. lawsuit remains unresolved and the necessity of the Umbrella policy is unknown.

Under Pennsylvania law, "[a]n insurer is required to indemnify only where the insured is held liable for a claim actually covered by the policy." *USX Corp. v. Adriatic Ins. Co.*, 99 F.Supp.2d 593, 611 (W.D.Pa.2000) (citing *Gen. Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997)). "As a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action." *Victoria Ins. Co. v. Mincin Insulation Servs., Inc.*, No. Civ.A. 08–909, 2009 WL 90644, at *5 (W.D.Pa. Jan. 14, 2009) (quotation omitted).

Here, Rice's argument against prematurity is unavailing based upon the above well-settled law. Rice has not alleged that liability in the L.H. lawsuit has been established, and where Rice has not been found liable for damages in the underlying action, any claim for RSUI

to indemnify is premature. Further, Rice has not alleged that any underlying coverage under the RSUI D&O policy has been exhausted. Thus, RSUI's partial Motion to Dismiss, as regards indemnity under the Umbrella policy, will be granted.

### c. Statutory Bad Faith

Finally, RSUI argues that Rice's statutory bad faith claim fails because, when no coverage for defense and/or indemnification exists, there can be no bad faith as a matter of law. Rice contends that it made a legitimate demand for coverage pursuant to the terms and requirements of the Umbrella Policy, and that the question, of whether RSUI's refusal to defend and indemnify under its Umbrella Policy was in bad faith, remains a question of fact.

"Resolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim premised on the denial of coverage, because under the circumstances the insurer necessarily has a reasonable basis for denying benefits." *Gold v. State Farm Fire and Cas. Co.*, 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012) (citing *Frog, Switch, & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999)).

Here, given that the language of the Umbrella policy does not provide Rice within any present right to coverage, RSUI's denial of a defense and indemnification under the Umbrella policy is reasonable. As such, Rice cannot presently maintain a statutory bad faith claim against RSUI concerning RSUI's denial of coverage under the Umbrella policy.

Accordingly, based upon the foregoing, RSUI's Partial Motion to Dismiss will be granted. Rice's claims, as regards the RSUI Umbrella Policy within Counts II (Declaratory Judgment), Count V (Breach of Contract), and VII (Bad Faith) will be dismissed. Because the Court's analysis is based upon the policy language, the pending status L.H. lawsuit, and the non-

exhaustion of the RSUI D&O policy, any amendment to Rice's dismissed claims against RSUI related to the Umbrella policy would be futile. Therefore, there will be no leave to amend.

A separate order will follow pursuant to Fed. R. Civ. 58, and will direct RSUI to answer the remaining claims against it.

DATED this 6th day of December, 2023.

BY THE COURT:

MARILYN J. HORAN
United States District Judge